IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION,           : | |
|     Plaintiff/Counterclaim Defendant, : | |
| : | CIVIL ACTION |
| v.           : | |
| : | NO. 12-723 |
| MAURY ROSENBERG,           : | |
|     Defendant/Counterclaim Plaintiff. : | |

MEMORANDUM OPINION

**RUFE, J.**                                                                                                               **DECEMBER 19, 2013**

      These cross motions for summary judgment form the latest chapter in the dispute between U.S. Bank, Maury Rosenberg, and their affiliates, a fight that is now nearing the end of its first decade. In brief, U.S. Bank argues that Rosenberg owes it nearly $5,000,000 as a result of a personal guaranty he executed, plus interest, attorneys' fees, and costs. U.S. Bank moves for summary judgment on Rosenberg's liability under the guaranty. Rosenberg asserts that his liability under the guaranty is far lower than $5,000,000 and that, in any event, U.S. Bank cannot collect on the guaranty because it has acted in bad faith in its lawsuits against Rosenberg. Rosenberg has moved for summary judgment on his claims that U.S. Bank has engaged in wrongful use of civil proceedings in violation of the Dragonetti Act[1] and has committed abuse of process. He also moves for summary judgment on U.S. Bank's assertion that it is entitled to offset any money that Rosenberg wins from his counterclaims against the amount Rosenberg owes under the guaranty. In response to Rosenberg's motion, U.S. Bank asserts that it is further entitled to summary judgment that it is not liable on Rosenberg's Dragonetti Act and abuse-of-process claims and in the alternative that Rosenberg has already recovered the damages he seeks on those claims from a jury verdict he won in a Florida case arising from an involuntary

---

[1] 42 Pa. Cons. Cons. Stat. §§ 8351–8355.

bankruptcy petition filed against Rosenberg. For the reasons discussed below, the cross-motions will be denied.

**I.     Background**

In 2000, certain medical imaging companies (collectively, "NMI") controlled by Maury Rosenberg entered into leases for equipment with predecessors in interest to U.S. Bank, including Lyon Financial Services, Inc. In 2003, Lyon claimed that the lessees had defaulted, and filed suit against them. By July 2004, Lyon had filed no fewer than thirteen lawsuits against the lessees and Rosenberg. These suits were settled in 2005 pursuant to an agreement that provided pursuant to certain Modified Leases that NMI could continue to rent the equipment at a rate of $100,000 per month.

As part of the settlement agreement, Rosenberg executed a personal guaranty under which he would be liable for up to approximately $7,600,000 in the event of a default upon demand from Lyon. This maximum amount was to be reduced by about $127,000 every month that NMI paid its lease. According to this schedule, Rosenberg would have had no liability to Lyon after 60 months of NMI's renting the equipment.

The parties agree that NMI paid its rent for twenty-one months, reducing the Guaranteed Amount for which Rosenberg could be liable to about $5,000,000. The parties also agree that NMI defaulted after the twenty-first month. The parties disagree, however, over whether Lyon was entitled to demand payment from Rosenberg of the full $5,000,000 or whether Lyon was only entitled to its "reasonable costs and expenses" related to administering the leases after the execution of the guaranty.

After NMI failed to make its twenty-second rental payment, another flurry of litigation ensued. Entities related to U.S. Bank filed a confession of judgment in the Court of Common

Pleas of Bucks County and an involuntary bankruptcy petition in the Eastern District of Pennsylvania against NMI companies and Rosenberg. Rosenberg moved to strike or open the confession of judgment in Bucks County. Eventually, the confession of judgment in Bucks was stricken as to Rosenberg; U.S. Bank transferred the action to the Court of Common Pleas of Philadelphia; and the action was deferred because of the involuntary bankruptcy proceedings.

On Rosenberg's motion, the bankruptcy proceeding was transferred to the Southern District of Florida, where he lives. He succeeded in having the proceeding dismissed, and he was adjudged entitled to about $1,000,000 in fees from the parties who filed the petition. He also won a jury verdict in the Southern District of Florida for $6,120,000 on a claim that the involuntary bankruptcy petition had been filed in bad faith. While the Florida litigation was pending, U.S. Bank filed suit here for breach of the guaranty.

## II.       Standard of Review

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[3] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

## III.      Discussion

### A.       Guaranty Liability

As a threshold matter, the parties dispute whether Pennsylvania's four-year statute of limitations for contract actions has run in this suit. The court is persuaded that Pennsylvania's

---

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

"savings" statute guarantees that this suit is timely.[5] That statute provides, "If a civil action or proceeding is timely commenced and is terminated, a party, or his successor in interest, may, notwithstanding any other provision of this subchapter, commence a new action or proceeding upon the same cause of action within one year after the termination." The confession of judgment action is a civil action, timely commenced, and this is a new action based on the same cause of action, namely the breach of the guaranty. The only dispute with respect to timeliness is whether the confession of judgment action against Rosenberg was terminated for savings statute purposes. On November 22, 2011, the Court of Common Pleas struck the judgment as to Rosenberg. Rosenberg does not argue to the contrary; rather, he states that because U.S. Bank argues that the confession of judgment proceedings were not terminated for Dragonetti Act purposes (discussed below), they were not terminated for savings statute purposes. Neither party can have it both ways. The confession of judgment action terminated both for Dragonetti Act Purposes and for savings statute purposes on November 22, 2011. This action was filed in February, 2012. Therefore the suit is timely.

On the merits, U.S. Bank argues that Rosenberg has a contractual obligation to pay U.S. Bank about $5,000,000 under the Guaranty. Rosenberg guaranteed to Lyon "the full and prompt payment when due, whether by acceleration or otherwise, [of] the sums identified as the 'Guaranteed Amount' . . . plus interest . . . and reasonable collection charges."[6] "Guaranteed Amount" is a defined term, which based on the schedule of payments in the Guaranty equals about $5,000,000; Guaranteed Amount plus interest and reasonable collection charges are collectively defined as "Obligations." The Guaranty continues to state that if an Event of Default

---

[5] 42 Pa. Cons. Stat. § 5535.

[6] Doc. No. 78-4 at 46a ¶ 2.

4

occurs under any of the Modified Leases, "the Guarantor shall, upon the demand by the Agent, pay the Obligations."[7] The parties do not dispute that NMI's failure to make the twenty-second monthly payment was an event of default.[8]

U.S. Bank argues that it succeeded to the Guaranty when Lyon merged into U.S. Bank.[9] It further argues that the Guaranty unambiguously provides that upon an event of default, Rosenberg became liable to U.S. Bank for the Guaranteed Amount, plus interest and expenses. Rosenberg argues that because he guaranteed this amount to Lyon, while the NMI entities' guaranties ran to certain Lessors (defined in the NMI Guaranties), there is ambiguity about the extent of Rosenberg's Guaranty. Rosenberg argues, based on a conversation he had with U.S. Bank's counsel, that his guaranty was limited to Lyon's costs in collecting the amounts owed to U.S. Bank.

Rosenberg's contention is based on inadmissible parol evidence of a conversation contemporaneous with the execution of an unambiguous written document and is therefore without merit.[10] He guaranteed the Obligations, including costs *and* the Guaranteed Amount that the parties do not dispute is equal to $4,921,912.88 (taking into account a credit that U.S. Bank will not dispute for the purposes of this motion).[11] The Guaranty ran to Lyon. U.S. Bank is

---

[7] *Id.*

[8] Stipulation of Material Facts, Doc. No. 78-1, ¶ 38.

[9] Rosenberg has not disputed that U.S. Bank succeeded to any rights Lyon had under the Guaranty, and therefore the Court assumes for the purposes of this Opinion that U.S. Bank can enforce Lyon's rights under the Guaranty. See also, Joint Pre-trial Stipulation, *Rosenberg v. DVI Receivables, XIV, LLC et al.*, No. 12-cv-22275, Doc. No. 20 at ¶ 11 (S.D. Fla. Sept. 17, 2012) (stating that Lyon merged into U.S. Bank). This paragraph is "incorporated by reference" into the parties' Stipulation of Material Facts before this Court. Doc. No. 78-1, ¶ 64.

[10] *Rose v. Food Fair Stores, Inc.*, 437 Pa. 117, 120–21 (1970) ("Briefly stated, the parol evidence rule seeks to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous oral declarations.").

[11] The Guaranty limits Rosenberg's liability to $7,661,945, less $127,699.08 per month that NMI paid its rent. The credit that U.S. Bank does not contest for the purposes of its summary judgment motion is $58,351.44. The parties agree that NMI paid its rent for 21 months. $7,661,945 - $127,699.08*21 - $58,351.44 = $4,921,912.88.

Lyon's successor in interest. Rosenberg breached the Guaranty. U.S. Bank sent a demand letter on January 12, 2012, and Rosenberg did not cure his breach.[12]

However, Rosenberg's mitigation defense precludes summary judgment. As far as mitigation is concerned, U.S. Bank argues *only* that that Rosenberg waived the defense in the Guaranty. But this court has already ruled that the mitigation defense is not waived.[13] U.S. Bank has not alleged that there is no issue as to a material fact about the mitigation defense, and therefore it has not met its burden at summary judgment.

    B.    *Dragonetti Act*

Pennsylvania's Dragonetti Act allows a civil suit for wrongful initiation of civil court proceedings without probable cause and for a purpose other than securing adjudication of a legal claim, when the proceedings end in favor of the defendant.[14] Rosenberg contends that the confession of judgment proceedings violated the Act; both parties seek summary judgment on this claim.

Rosenberg executed a confession of judgment stating that he was liable to Lyon for the Guaranteed Amount if the NMI leases went into default and that default was not cured. Lyon filed the confession of judgment in the Bucks County Court of Common Pleas; Rosenberg contested the confessed judgment, and it was stricken. Later, Lyon transferred the judgment to the Philadelphia Court of Common Pleas, but the parties agree that "[a]s a result of the Bucks

---

[12] The parties dispute whether Lyon sent a demand letter in March 2008, but in any event the letter of January 2012 undisputedly demanded payment and offered an opportunity to cure.

[13] *U.S. Bank, Nat. Ass'n v. Rosenberg*, CIV.A. 12-723, 2013 WL 272061, *5 (E.D. Pa. Jan. 24, 2013).

[14] 42 Pa. Cons. Stat. §§ 8351–8355.

County court's striking of the confessed judgment against Rosenberg, the transferred judgment against Rosenberg, entered in Philadelphia County, should be deemed to be a nullity."[15]

The parties dispute whether the confession of judgment proceeding was terminated in Rosenberg's favor. Rosenberg argues that it was terminated in his favor because the confessed judgment was stricken. U.S. Bank argues that it was not terminated in Rosenberg's favor because U.S. Bank can still pursue its claim against Rosenberg under the Guaranty.[16]

Upon review of Pennsylvania law governing confessed judgments, the Court is satisfied that an order striking the confessed judgment is a termination in favor of the defendant for Dragonetti Act purposes. An action for confession of judgment is a summary proceeding in Pennsylvania, whereby a plaintiff files a complaint and a copy of an instrument signed by a defendant authorizing a confession of judgment.[17] The only way the defendant can challenge the action is to file a petition to strike or open the judgment.[18] Since no relief is available to a confessed judgment debtor other than striking a judgment or allowing a defense to succeed after the defendant opens the judgment, and Rosenberg succeeded in having the confessed judgment stricken, he prevails on this element of his Dragonetti Act claim. The fact that U.S. Bank can still pursue Rosenberg for the amount confessed is of no moment since the question is whether U.S.

---

[15] Doc. No. 96 at 2.

[16] The case law that the parties provide is not particularly helpful, and the Court's own research has revealed only one case where this issue has been litigated. There, the judge assumed without deciding that striking a judgment constituted an adjudication in favor of the defendant to the confessed judgment. *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 542 (E.D. Pa. 1982).

[17] Pa. R. Civ. P. 2950–2952.

[18] *Id.* R. 2959; "A petition to strike and a petition to open are two forms of relief with separate remedies; each is intended to relieve a different type of defect in the confession of judgment proceedings. A petition to strike off the judgment reaches defects apparent on the face of the record, while a petition to open the judgment offers to show that the defendant can prove a defense to all or part of the plaintiff's claim . . . A motion to strike a judgment will be granted only if a fatal defect or irregularity appears on the face of the judgment, and the defect must be alleged in the motion to strike." *F.D.I.C. v. Deglau*, 207 F.3d 153, 167 (3d Cir. 2000).

Bank wrongly instituted confession of judgment proceedings; it is the use of those *proceedings*, not U.S. Bank's claim for $5,000,000, that Rosenberg's Dragonetti Act counterclaim attacks.

U.S. Bank's reliance on *AAA Waste Disposal v. Avena*, a case where a court lifted a confession of judgment in order to allow a previously filed lawsuit to proceed to a judgment on the merits is misplaced.[19] In that case, the plaintiff in the confession of judgment action voluntarily dismissed the confession of judgment in order to pursue the same claim in another court, where that plaintiff ultimately prevailed. Here, Lyon contested the petition to strike the confessed judgment and lost. Since Rosenberg prevailed in the confession of judgment action by obtaining the relief he sought over Lyon's objection, the Court concludes that the confession of judgment action terminated in Rosenberg's favor.

However, in order to prevail on summary judgment, Rosenberg must also demonstrate that the confession of judgment action was commenced without probable cause and for a purpose other than securing adjudication of a legal claim. Rosenberg argues that the confession of judgment was filed without probable cause because U.S. Bank failed to issue a demand letter to Rosenberg and offer him an opportunity to cure before filing the confession of judgment.[20] U.S. Bank replies that it had probable cause as a matter of law because it sent Rosenberg a demand

---

[19] *AAA Waste Disposal v. Avena*, 896 F. Supp. 485, 487 (E.D. Pa. 1995).

[20] Rosenberg also puts forward the childish argument that because the confession of judgment states that Rosenberg waived his right to contest judgment "freely, knowingly and ***in*voluntarily**" Doc. No. 78-4 at 165a (emphasis added), the confession of judgment is unenforceable. It is obvious that "involuntarily," which means the opposite of "freely," is a typo (much like the typo in the next word of the confession of judgment, "waive," which should be "waives"; does Rosenberg expect the Court to disregard the waiver because the plural verb with a singular subject is asyntactical?). Additionally, Rosenberg should be careful about urging the Court to take typos literally. According to the Stipulated Material Facts, "Rosenberg's liability is limited to the sum of $7,661,945,***000***." Doc. No. 78-1 at ¶ 23 (emphasis added). The actual amount under the Guaranty is $7,661,945.00. Doc. No. 78-4 at 50a ¶ 16. The Court does not know why the parties got this figure wrong by three orders of magnitude, but Rosenberg will not be held accountable for the extra seven and a half billion dollars he stipulated he was liable for.

letter on March 21, 2008, thereby complying with the conditions precedent to filing a confession of judgment action.[21]

Assuming for the purposes of this Opinion that the March 21 letter was not a demand letter, summary judgment is nevertheless inappropriate because Rosenberg must demonstrate that the confession of judgment proceeding was instituted for a purpose other than securing adjudication of a legal claim. Even if U.S. Bank lacked probable cause because the March 21 letter was insufficient, its purpose in pursuing the confession of judgment action may have been proper. Filing the confession of judgment prematurely may have been overly aggressive and poor strategy (as the striking of the judgment suggests), but it does not conclusively prove a purpose other than securing the sum Rosenberg owed under the Guaranty.

Rosenberg has produced evidence in addition to the striking of the judgment to support the notion that U.S. Bank prosecuted this action abusively and with a primary purpose to harass Rosenberg and destroy his business: Rosenberg has had to defend against over a dozen lawsuits brought against him related to the leases at issue here, including an involuntary bankruptcy filed in bad faith. By contrast, U.S. Bank has produced the confession of judgment itself, which supports the inference that U.S. Bank's purpose in pursuing the confession of judgment was to recover the amount Rosenberg owed under the Guaranty. U.S. Bank's purpose in filing the confession of judgment is a genuinely disputed material factual issue, and therefore summary judgment on the Dragonetti Act claim will be denied to both parties.

### C. Abuse of Process

---

[21] The Court is aware that another judge has found that the March 21 letter was *not* a demand letter. *In re Rosenberg*, 414 B.R. 826, 836 (Bankr. S.D. Fla. 2009) ("The letter did not expressly demand payment from Rosenberg as a result of the alleged event of default and did not indicate the amounts due under the Limited Guaranty would be accelerated. Notwithstanding, no opportunity to cure was provided to Rosenberg in such letter."). This Court need not decide what, if any, preclusive effect to give this ruling, however, because of the factual issues related to U.S. Bank's purpose in pursuing the confession of judgment.

An abuse-of-process claim must allege: 1) an abuse or perversion of process in a case already initiated; 2) primarily to achieve an unlawful or ulterior purpose; 3) causing harm to the other party.[22] In other words, abuse of process is the use of civil litigation as a tactical weapon to accomplish a purpose other than legitimate object of the litigation.[23] "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."[24] The principal difference between abuse of process and a Dragonetti Act claim is that the former focuses on a party's conduct during litigation and does not require termination in favor of the injured party, while the latter focuses on the injuring party's motivation in initiating a lawsuit and requires termination in favor of the defendant to the complained-of proceeding.

The second element of abuse of process is similar to the Dragonetti Act's requirement that the wrongfully instituted civil proceedings must be filed for a purpose other than adjudicating a legal claim. For the same reasons that neither party is entitled to summary judgment on the Dragonetti Act claim, neither prevails on the abuse-of-process claim.[25] Because the parties genuinely dispute the material fact of U.S. Bank's primary purpose in prosecuting the confession of judgment action, the Court cannot award summary judgment to either party.

---

[22] *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. 1984); *Tomalonis v. Levant*, No. 731-EDA-2004, 2005 WL 1677555, at *2  (Pa. Super. May 10, 2005).

[23] *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003); *Tomalonis*, 2005 WL 1677555, at *2.

[24] *Tomalonis,* 2005 WL 1677555, at *3. Abuse of process is related to misuse of proceedings, and at one point it appeared that the Dragonetti Act covered both torts. *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 589 Pa. 296, 299 (2006) ("The Act subsumes both the torts of malicious use of process and abuse of process."). However, the Pennsylvania Supreme Court's statement that the Dragonetti Act subsumed abuse of process was recognized as dicta in *Langman v. Keystone Nazareth Bank & Trust Co.*, 502 F. App'x 220, 225 (3d Cir. 2012), which also held that Pennsylvania courts still recognize abuse of process claims.

[25] This court has previously ruled that the facts alleged state a claim for abuse of process. *U.S. Bank, Nat. Ass'n v. Rosenberg*, CIV.A. 12-723, 2013 WL 272061 (E.D. Pa. Jan. 24, 2013). The facts adduced in the parties' summary judgment motions do not alter this conclusion.

U.S. Bank further alleges that the abuse-of-process claim is time barred. It argues that Rosenberg could have prosecuted his abuse-of-process claim as soon as the Bucks County Action was filed, and that therefore the two-year statute of limitation precludes recovery. U.S. Bank's argument that the abuse-of-process claim was ripe at the time the Bucks County Action began is plainly wrong, since abuse-of-process claims accrue only *after* initiation of civil proceedings when some process is abused. Therefore, the claim accrues at the time an abusive act that could sustain a claim for abuse of process occurs.[26] Since the application of the statute of limitations is an affirmative defense and U.S. Bank's argument is based on a misunderstanding of the tort, it has not met its burden of proof on this issue.

      D.    *Damages*

U.S. Bank argues that Rosenberg is seeking a windfall double recovery on his abuse-of-process and Dragonetti Act claims because he was awarded damages for the same injuries in the Florida action, with the exception of approximately $95,000 in fees and costs incurred in defending against the confession of judgment. Rosenberg asserts that he suffered unique damages from the wrongfully instituted bankruptcy proceedings and from the confession of judgment actions, and that he is seeking punitive damages related to the wrongful institution and prosecution of the confession of judgment action.

Whether the harm to Rosenberg is "capable of apportionment among two or more causes is a question of law, and is for the decision of the court in all cases."[27] However, "[o]nce it is determined that the harm is capable of being apportioned, the actual apportionment of the

---

[26] *Cf. Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F. Supp. 2d 691, 701 (E.D. Pa. 2009) ("Based on the evidence that Jesse cites, the *last* act of defendants that could have given rise to his claim for abuse of process happened in August of 2004, and there is no doubt he could have filed a suit at that time.").

[27] *Voyles v. Corwin*, 295 Pa. Super. 126, 130 (1982).

11

damages among the various causes is a question of fact, which is to be determined by the jury."[28] It is clear, as U.S. Bank concedes, that Rosenberg is alleging at least *some* distinct injury in the nature of the fees and costs incurred as a result of the Bucks County Action. Moreover, punitive damages for the torts of wrongful use of civil process and abuse of process would be separate from the punitive damages awarded in the Florida Action.

The record at this time does not disclose whether the award in the Florida action fully compensated Rosenberg for all the lost wages and injury to reputation he suffered, or whether he was compensated only for those losses that flowed directly from the wrongly instituted involuntary bankruptcy proceedings. Although the Court recognizes the basic logic of U.S. Bank's position, Rosenberg's affidavit related to damages[29] and U.S. Bank's argument about Rosenberg's double recovery do not demonstrate enough for the court to award summary judgment to either party at this time. If this case proceeds to trial, the Court will entertain briefing on this issue in the nature of a motion *in limine*.

### E. Setoff

U.S. Bank has stated that if it prevails in this action, it may seek to offset any amount that Rosenberg owes to it against the $6,000,000 that U.S. Bank owes to Rosenberg from the Florida action. Rosenberg argues that under § 303(i) of the Bankruptcy Code, a creditor adjudged liable to a debtor for filing a bankruptcy petition in bad faith cannot offset the amount it owes the debtor against any amount the debtor owes the creditor.

The cases that Rosenberg cites are inapposite. They interpret the Bankruptcy Code and demonstrate that some courts have been unwilling to offset a creditor's claim against a debtor's

---

[28] *Id.*

[29] Doc. No. 78-2.

award for costs and attorneys' fees[30] and that courts will not offset non-mutual debts against one another.[31] But this is not a bankruptcy case, nor have U.S. Bank's claim on the Guaranty nor Rosenberg's claims for abuse of process nor for a Dragonetti Act violation been reduced to judgment. Additionally, Rosenberg's award in the Florida Action was not just an award of attorneys' fees; it also compensated him for lost wages and emotional distress and included a substantial punitive component. The policy concerns animating the cases that Rosenberg cites are not squarely implicated here.[32]

U.S. Bank, for its part, avers that "There is authority for offsetting mutual judgments entered by separate courts in separate actions," and states that it may request that this Court or the Florida Court approve a judgment-to-judgment setoff in the event that it prevails here. The bank argues that the availability of setoff is not ripe for decision because its claim has not been reduced to judgment.[33] The Court agrees. Setoff could be litigated either if Rosenberg sought to execute the Florida judgment or if either party produced evidence and legal argument that conclusively established its entitlement to judgment on the matter. Since none of these events has taken place, the Court is unable to resolve the setoff issue.

---

[30] *In re Schiliro*, 72 B.R. 147 (Bkr. E.D. Pa. 1987); *In re Diloreto*, 388 B.R. 637 (Bkr. E.D. Pa. 2008); *In re Macke International Trade, Inc.*, 370 B.R. 236 (B.A.P. 9th Cir 2007); *In re Imane Fe, LP*, B.A.P. No. CC-12-1111, 2012 WL 5418983 (Nov. 7, 2012).

[31] *In re K.P. Enterprise*, 135 B.R. 174 (Bkr. D. Me. 1992); *In re Imane Fe, LP*.

[32] Rosenberg also argues that claim preclusion and waiver bar U.S. Bank from raising the setoff defense. These arguments fail because the parties did not litigate the issue of setoff in order to avoid duplicative or conflicting judgments on this issue. U.S. Bank withdrew its setoff claim in the Florida Action specifically to continue to pursue it here, *as Rosenberg argued it should*. See Doc. No. 86-4 at 6 (allowing U.S. Bank to pursue the setoff claim in Florida "would . . . create the possibility that the first judgment entered would have a preclusive effect on the claims pending in the other court, resulting in an absurd waste of judicial resources"). The Court notes that this withdrawal somewhat blunts U.S. Bank's argument that it is asserting "setoff as a defense to Rosenberg's two counterclaims, *not* to the Florida judgments." Doc. no. 86 at 20. Functionally, it would appear that that the defense, if allowed, would be the same to U.S. Bank in this case or the Florida one.

[33] As of October 29, 2013, post-trial motions remained pending in the Florida action. Doc. No. 96 at 3–4.

### IV. Conclusion

The parties' respective motions for summary judgment are denied. In conducting this analysis and review of the record, the Court further holds:

1. The breach of contract action is timely;

2. The Guaranty unambiguously guaranteed payment of at least the Guaranteed Amount (defined therein) to Lyon, and parol evidence varying that interpretation is inadmissible;

3. In the Guaranty, "involuntarily" is a typo and should be read as "voluntarily";

4. The confession of judgment proceedings were terminated in Rosenberg's favor for purposes of the Dragonetti Act.

An appropriate Order follows.